Your Honor, it's the first case of the afternoon, Session 208, 1029, Houston State of Illinois v. Chester McKinney III. On behalf of the Avalanche, Mr. Wayne E. Bluecar, on behalf of the athlete, Ms. Anastasia Brooks. Mr. Bluecar? Good afternoon. May I? Please. Counsel for the State. May it please the panel. On behalf of Mr. McKinney, the case against Mr. McKinney was based upon the accusations of a four-year-old and a six-year-old. There was no physical evidence. There was no confession. And the only thing that came close to corroboration was an alleged jailhouse statement that Mr. McKinney made. I just want to clarify there, what was the status of those kids testified? The children did testify. And how old were they when they testified? When they testified, they were four and six at the time of the accusations. They were about 10 and 12. So what is their... I mean, you said the case is based on statements of three or four-year-olds. It's also based on statements of 10 and 12-year-olds, right? I mean, that's a testimony of 10 and 12-year-olds. Sure. To clarify that in terms of what you're saying. I'm trying to be up there. My point is we have these cases with these out-of-court statements by children sometimes. But here, we've got the children at a more advanced age actually testifying. Absolutely. That's a big difference. To me, that's a big difference. The point I'm trying to bring out, however, is the fact that the case is based on statements originating when one was four and one was six years old. Obviously, when the case came to trial in 2008, which was seven years after the allegations were made, the children were obviously older. To a large extent, that goes to part of my argument on the use of 11510 statements in this manner. Okay. Go ahead. The way you started it out with it, I want to make sure that I... Because we have cases where there isn't as much corroborating activity. The testimony isn't always there in full-blown testimony. Both of the girls were on the stand. Right. That's what I thought. Okay. And in light of that, where I was going initially is I think the most glaring error in this case was the State's indoctrination of the jury. During voir dire and their appelling of a jury for the particular predisposition towards a position that they took. In the brief, it's very, very clear that the State was continually asking questions of every panel of the veneering. Can you accept a case we are putting on in effect where we don't present any physical evidence to you? The question was asked time and time again. Are you expecting some kind of scientific evidence? Are you expecting physical evidence? The State was basically doing a preemptive strike at that point and telling the jury, look, we don't have any evidence in this case other than testimony. In light of that, can you decide this case? And what's particularly telling about that, what's particularly disturbing about their use of that particular technique was when they had two jurors who took exception to that. Juror Russell and Russell Aguilar who said, no, we would expect to see some kind of physical evidence regardless of the span of time in a case like this. Both of those jurors were excused by the State. So basically what the State was doing with their verdict is they were indoctrinating the jury and they were putting together a jury which in their mind, I believe, and it's shown by their behavior, tried to circumvent the legal principle, the simple principle that of reasonable doubt. What they were asking the jury was extraordinarily improper. They are trying their case beforehand. They are making an excuse for their lack of evidence. People v. Loeb says no legal principles or concepts should be put to a jury of idea beyond whether they are willing to accept and follow instructions. People v. Dahl talks about pre-educating a jury or instructing a jury on the evidence or handling a jury with particular predispositions. The State's behavior is crystal clear from the way they handled this veneer that they were throwing off people who they thought might not give them the kind of decision they wanted if they didn't provide physical evidence. And that kind of evidence is something that should be considered a reasonable doubt, not something that the jury should be pre-educated for. Well, counsel, you've given us the names of a couple of cases there, and you've certainly got cases in your briefs, and the ones you just cited refer to some general language about not pre-educating a jury, et cetera, et cetera. But have you got something that's more specific? What are the specifics of that case? What conduct there amounted to improper? What amounted to improper conduct? I mean, it would be great, but you haven't shown me a case where this is not an unusual situation. Sex case without physical evidence, do we have cases that say asking that question is improper? Well, I don't say that it's not unusual to have a case like that. But it is improper because that is part of the jury's province to make a determination whether the state has presented a case beyond a reasonable doubt, whether there's physical evidence there, whether there's a reason why there's not physical evidence there. That's something for the case itself. That's not something for voir dire. If you're talking about specific incidents, I bring your attention to people versus Boston. In Boston, weren't they somewhat giving them instruction on the law? As indoctrinating the jury, and they were actually giving them some instruction on the law, or is it distinguished from the case that we have? They're just asking, would you expect certain type of evidence in this case? I mean, in Boston, I think they were asking whether people should become involved in domestic matters. Must there be consent before two people engage in sex? I mean, aren't those legal issues that are ultimately for the trier of fact? Absolutely, Judge, and I don't believe that's any different here. The legal issue here, even though it's a larger legal issue, is perhaps the most important legal issue. It's the issue of reasonable doubt. If there's anything that we can panel a jury for, it's for them to be able to look at the evidence in a global way and make a determination with everything that the State has come forward with, if the State has proved its case beyond a reasonable doubt. Here, the State is attacking that legal principle right from the beginning, telling the jury, look, we don't have evidence. We're going to ask you to convict anyway. They didn't say that. They just said, in a child sexual abuse case, do you expect to see physical evidence is what they asked, correct? That is one of the questions that they asked. But if you take a look at what they asked, they asked the questions repeatedly. They asked it in different ways, and the tenor of what they asked over and over and over again, and I documented that in the brief with specific quotes from the transcripts, are you expecting this kind of evidence? In effect, will you be able to convict if you don't have this kind of evidence? You watch CSI on TV. Do you want it to be like CSI? This is not the witherspooning of a jury that we have here. When you're asking a jury about their particular predispositions about whether they can convict or not, what you have here is, to me, it's very clear. They're saying, we let this evidence. Can you convict without this evidence? I think that's exactly what they were asking. I think that's a fair statement of what they were asking. Suppose they've got a juror that comes back and answers that question. No. The juror says, I would never vote to convict in a sex case without physical evidence. Is the state required to accept that jury? I don't think the state should be allowed to ask that question because, again, and I use the example of witherspoon. When we're witherspooning a jury, we have a particular reason to see whether a jury has, or a juror on the jury, has a particular inclination towards a concept that legally we have to have on the table. I don't think that's the case here. The case here is a question of reasonable doubt. The case here is a question of the state's presentation of its case. Does it rise to reasonable doubt? What we have people saying, my position is the question is improper. The question never should have been allowed to be asked. I understand the question's improper. So then if, in fact, there's a juror who is, for whatever reason, absolutely in the position that they will never convict without physical evidence in a sex case, the state is going to have to accept their juror and lose every time. Is that right? Taking that to its logical extension, people will have predispositions towards everything about life and many aspects of a case. I understand what you're saying. The question then, I suppose, becomes is this something that in a case like this should be properly asked? I understand where you're coming from. My position simply is no. You cannot ask a jury or any member of a juror about particular things, particular predispositions that they have in their mind regarding legal principles. And what I find so distressing about this particular one is the breadth of the legal principle we have right here. Well, is medical evidence required in a child sexual abuse or sexual assault case? No. No, purely and simply, I know of no law that says there has to be that. It's an element. It's an element of the state's proof going towards the issue of reasonable doubt. It's an element? I shouldn't say it's an element. No, it's not an element. I'm sorry, I misspoke on that. It's a question of whether they're putting their case together. It's one of the proofs that they have. Obviously, here is a case where legally they can put on a case. They can put on a case with nothing but testimony. Certainly, they can put on a case with nothing but testimony. Certainly, there can be a conviction with nothing but testimony. But what we're doing here is we're indoctrinating jurors right at the beginning. And not only that, the law is real clear on that. And Dahl is real clear about it, talking about the state impaneling jurors that have a particular predisposition, which is exactly what the state did here. I think you're right. I think that the state was able to impanel a jury that certainly they were avoiding impaneling a jury that had a firm predisposition that there had to be physical evidence. And I suppose it might be fair to say that they were able to impanel a jury that was open-minded. No, not open-minded, that would convict even without physical evidence if the other evidence was sufficient. But I don't think it's a question of open-mindedness. I think it's a question of misdirection here. Because I think a jury has to be able to – one of the themes was brought up by the state in their question to the jury was, well, after all this time – and that's language that they use again and again – well, after all this time, can you understand that we might not be able to collect physical evidence? After all this time, can you understand that there might not be physical evidence? When there was medical evidence from the beginning that there was – that nobody could say that there had been any sexual molestation, any evidence physically by an expert to say that either one of those child was subjected to any kind of sexual abuse, any kind of sexual action? Well, the testimony was that at the time the girls were examined, there was no evidence of any sexual abuse or sexual assault, which is not typically uncommon in those types of cases. So after all that time, it doesn't matter if all that time passed because the doctor's testimony was closer to the date of the allegations, if I understand correctly. Furthermore, there is case law out there, is there not, where the jurors have been asked, do you feel that you will be able to – would you be able to convict a defendant on circumstantial evidence? Or would you be open-minded to hearing just circumstantial evidence? And the courts have found that those are proper questions. I think it's People v. Freeman. Would you find it difficult in your own mind to find a verdict of guilty if a good portion of the evidence which you heard is what is called circumstantial evidence? The court found that that's proper. How is this question any different than asking if you would convict on circumstantial evidence? In this particular case, the State is addressing a particular piece of proof that they do not have. And I understand what you're saying, and I agree with what you're saying, and I agree with what the court is saying. If you're talking about asking about large legal principles, that's not a problem. Can you convict on circumstantial evidence? Can you believe that the defendant as he sits there is innocent until proven guilty? Will you hold the State to the bar on proving the defendant guilty beyond reasonable doubt? Absolutely, those are questions that not only can be asked, but should be asked. Now we are zeroing in on something else. Now we're zeroing in on a proof problem that the State has, and the State is trying to clean up the proof problem before the jury ever gets in the box. Hey, we don't have any physical evidence. Is that going to bother you? I think that's a little bit different than talking about broad legal principles and whether or not the jury can follow broad legal principles. The State here is clearly, not just by its questions, but again, by its actions. Two jurors said, no, we would want to see that. They're off the jury immediately. So what the State is doing is they're getting a jury that's predisposed to the particular evidence they have. Not one who's going to look at all the evidence and consider it beyond a reasonable doubt, but one who's predisposed to the particular kind of proofs that the State has in this case. I think Voyager specifically is designed to avoid that sort of thing. There should have been an objection to these questions right at the beginning. My allegations in here is that counsel should have objected to those questions. I'm not asking you to do this on plain error. I believe that he had a responsibility. That should have been stopped right from the beginning. Because one of the things the case law also talks about is these kind of questions can really have an effect on a case when the evidence is closely balanced. What do we have here? We have a procession of statements starting in 2002 and culminating in the ones that were put forth under 11510 in 2005 of statements that the girls made. Absolutely nothing else. My client never made a confession to this. My client, I got to understand, denied committing these acts. The State brings in somebody from the jail that he allegedly made a jailhouse confession to, even though he seemed to have been clever enough not to say anything to the police or say anything in court. So if you're talking about a case where the evidence is closely balanced, this is a case. Also, take a look at the circumstances of this particular case. Specifically, very distressing, the two girls in this case before the outcry was made, and it wasn't really even an outcry, there was an inquiry made to be able to get to these allegations, had been subject to an act of molestation in the park. One of the girls had been forced to masturbate somebody in the park while the other girl had been forced to watch. So if you're talking about a situation in which girls have some kind of predisposition to say something like this, I can't imagine a clear incidence of it. And also what came out very clear from the testimony is that both of these girls were in a very, very difficult situation. I'm not trying to portray my client as any kind of saint, and he was living with a mother who obviously had significant problems. She had drug problems, she had employment problems, she had problems in maintaining residence at some point, and there was problems with the girls in terms of their residence. So what you've got here is the girl's father certainly had problems and passion about what had happened to his children in the environment. So what we have here is a particularly disturbing situation. We have a situation where, yes, there are allegations that are made. There's nothing of any significance that's corroborating it. My client from beginning to end, and I will pay lip service to the JLS Convention, from beginning to end said it didn't happen. So if you're talking about a case where evidence is closely balanced, this is one of those cases. This is one of those cases where, and as you look at the allegations as they evolved over the years, which started first with masturbation and then got to vaginal sex, oral sex, anal sex, you're talking then about allegations of a grown man having anal sex with a 4-year-old and a 6-year-old, and you're talking about doctors who are coming in who are saying that there's no evidence of any kind of sexual abuse. There's no evidence of sexual contact or not. That's very significant evidence in this particular case. But what the State chose to do for their own burden was to indoctrinate a jury and impanel a particularly disposed jury in this kind of case to tailor it to the kind of evidence they have. I don't know that you can find a case like this where you'll have evidence that is more closely balanced, and it's just that kind of indoctrination that is what the courts are talking about in this case, why jury voir dire should be limited very, very simply to whether or not the jurors can follow the law. And this is not this. Well, basically, weren't they asking them if they could follow the law? You know, sexual evidence, medical evidence is basically not required. So they're saying if there's a case where there's no medical evidence, would you still be able to convict, basically? That would be the case if the law said that medical evidence is not required. It's not what the law says. Medical evidence is not required, but there is no hard law. You know, there's nothing in our statutes that say for the State to go forward on the case, they don't need to put medical evidence forward. The State cites the case of Faulkner, which is a very interesting citation, this particular case. They used that to show that our position is incorrect because in Faulkner, the jury was able to inquire with the jury as to whether or not the fact that there was no body in the murder case, you know, would it impress them to be able to go forward with the murder? The difference is in that particular case, you need a body, okay, because that's a corpus. The corpus of the case is the body, okay? So the juror in this particular case, you don't need a body by law. By law, in that particular situation, you don't need a body in a murder case. So in that particular case, the State was correct in being able to inquire with the juror as to whether or not that would impress them in some way because by law. How is that any different? By law, the law says you don't have to have a body. The law does not say you don't have to have medical testimony. There is no specific law anywhere that says that, and since there's no law to that, the jury should not be inquiring that. It's not a question of them following the law. The law is reasonable. The law is not a question of medical testimony. That is an issue of proofs. I have a follow-up question. You said there were two jurors who answered that they would not be able to convict if there was no physical or medical evidence, correct? Correct. My question is what follow-up questions did the State propound to those jurors, or were they just immediately dismissed? They were dismissed at the end of a colloquy in which the State tried to rehabilitate them to an extent, but when it became clear, and this is very clear from the transcript, when it became clear that their position was they wanted to see some physical evidence, they were excused. But there were some additional questions. Would you be able to put that aside? Would you be able to view this case based on the evidence that is presented and follow the law? Not to that extent. There was some colloquy, but not to the extent that we typically would think of rehabilitation, you know, as, for example, if I were to challenge for cause and then the trier factored in front of me, this is an inquiry with a juror. Well, okay, all that being said and done, would you still be able to follow the law? Now, there was no rehabilitation that was done like that. They were gone. And it wasn't for cause. It was peremptory. So theoretically, then, if this was the law, if this was in fact the law, their challenges should have been peremptory. Their challenges should have been for cause. But that's the whole point. It is not the law in this case. All right. Counsel, you'll have some time for rebuttals if there's a couple of final brief things you want to say. We'll just wait until rebuttals. Thank you. Counsel for the people, then. May I please the court and counsel? My name is Anastasia Brooks. I represent the people in this case. One thing I would like to start with is perhaps maybe one of the more important disputes in this case, which is the appropriate standard of review. And I know it might be somewhat of a mundane topic, but because in a particularly close case or a close issue, the standard review could make almost all the difference in the case. And the defendant's boilerplate citations to the fact that legal issues are reviewed de novo, whereas the state's brief cites the standards of abuse of discretion for both the admissibility of evidence under Section 115-10, as well as the trial court's regulation and monitoring of voir dire. So with respect to this first issue here, the voir dire issue, the standard here is, has the purpose of voir dire been frustrated? And, of course, then it becomes important to consider what is exactly the proper purpose of voir dire. And the whole case which mentions that standard says that it is to ascertain information about the beliefs of the potential jurors and to remove those whose minds are so closed by prejudice such that they cannot apply the laws instructed according to their oath. So here, the state's inquiries were actually following the proper purpose of voir dire, which is to discover those whose minds are so closed by prejudice here against the state, such that they cannot follow the laws instructed according to their oath, which is that if they find beyond a reasonable doubt that the defendant committed the crime, that they should return a guilty verdict. So in this case, they were questioning about their beliefs with respect to what was considered possible. If a victim had been abused, would it be necessary? And there were several references to the word necessary for there to be medical evidence. So therefore, if a person says, yes, there would have to be medical evidence, and of course, the testimony in the record establishes beyond reasonable doubt that there does not have to be medical evidence if a person has been abused. So therefore, that person is incapable of returning a guilty verdict when the evidence would support it. So therefore, that person is unqualified to serve as a juror. Whether they were dismissed for cause or whether it was by peremptory, they didn't make it on the jury. And that was a proper result because those persons were prejudiced against the state and unqualified by state of mind to serve as jurors. Why would the state use peremptory challenges then? Why didn't it use a challenge for cause? I cannot speak for the particular prosecutors, but it may be a situation where they felt they had enough peremptories rather than just get into the whole argument. There is no objection by the defense to the particular line of inquiry, so maybe they felt that, and I would be speculating why open up the can of worms if the defense is not objecting. Just simply, it seems like if there were in fact going to be almost everybody up there saying, yeah, I would think there has to be necessary evidence, then they would run out of peremptories. But here, it turned out that there was only two people that held firm objections in the state's perspective. They held firm to this notion of, and what we have here is allegations of penetration as the charge against children who was young as four and six years old, girls who, in a situation, some people would think there has to be medical evidence if penetration in fact had occurred. So therefore, those people would be unqualified to serve as jurors. What's your recollection, excuse me, counsel, of the question that was asked by my colleague here to your opponent about what follow-up questions took place with those jurors, those two jurors? Do you have a recollection of that, what the record shows? I believe one of the references was on page 35 of the appellant's brief where the question to Ms. Russell says, and Ms. Russell admits this, in that case, do you think it would be more difficult to actually find medical evidence if there is that delay from the time the incident happens until the actual medical examination? And then the next question is, do you still think it would exist? Do you believe it's possible that there wouldn't be any medical evidence? If the answers are unsatisfactory to that line of inquiry, what's possible, what's necessary? It's not a situation where the defendant compares it to Boston. Like somehow they're prescreening a theory of the case. Like a questioning would go along the lines of something like this if it were analogous. The prosecutor would sort of introduce the facts of the case. You have a 4-year-old and a 6-year-old who are having contact, unsupervised contact with a live-in boyfriend of the mother. And several months goes by and then they report it to their parents and to investigators. And in that circumstance, if the medical evidence would come back inconclusive, would you still convict if you believe the girls? And that would be an improper question because then you're prescreening the theory of the case for the jurors. You're including a lot of factual details, which is like in Boston. And so you're not asking here, would you convict if you believe the girls? The question is, could you convict if there were no medical evidence? And so it's somebody who is unable to reach a conviction in a case where the evidence supports a guilty verdict despite the fact that there's no medical evidence. That person's mind is so closed by prejudice because they have this sort of fixed or immutable concept in their mind, unchangeable by the evidence. If you put a medical doctor on the stand like here and he says, if the result is inconclusive, it's not a rule in, it's not a rule out. It doesn't mean this child was not abused. So therefore, they're unable to listen to that evidence. They're unable to weigh the case. With respect to the evidence in the case, they're drawing on preconceived notions that there has to be medical evidence in order for the abuse to actually have occurred. And so those persons are prejudiced by preconceived notion and therefore unfit to serve as jurors. And to exclude them is actually a proper result because both sides have a right to a fair trial. Both sides have a right to a fair and impartial jury. And so because there happened to be prejudice against the state does not give the defendant cause to complain when those jurors are removed. That may be making his conviction somewhat more likely in the sense that he could have had a better chance at winning the case if those prejudiced jurors had served. But that's not unfair prejudice. That's a fair trial if unfit jurors are removed from the case. So in that circumstance, Boston is distinguishable. And the case is more like Faulkner cited in the state's brief where here the analogy is that if there's no body, there's no murder. And here if there's no medical evidence, there's no sexual assault. And it's sort of like they're both being questioned about the absence of a particular piece of evidence. And those matters can be considered so controversial that there is a potential that some jurors, not based on prevalence according to Faulkner, but at least some jurors could theoretically, conceivably have such a fixed prejudice in their mind that regardless of what the state puts on in terms of medical evidence or whatever, they will still hold the belief and will result in at least their votes when it comes back to for consideration that they will not be persuaded by evidence or argument amongst the jurors in deliberation. Their mind will not be changed. And those people should not be on the jury. So here the legal principle is at least controversial enough to be analogous to Faulkner. And the standard of plain error because of the forfeiture, the state did not contest the closeness of the case. Well, perhaps that was the closer issue, whether it was closely and strongly balanced. But here to give the defendant a little bit of a doubt, I mean, there could be an argument, yeah, there's two girls independently coming up with some allegations that fit together and then there's the jailhouse informant. But still the case does boil down to the words of these witnesses versus the word of the defendant. And there would be some authority to say that that is still a closely balanced case. So I'm not going to fight that. However, there still has to be clear and obvious error. And that is something that's lacking here because the Boston opinion wasn't even issued at the time. So there is no authority for the judge or for the defendant to come up with an objection or for the trial court to, on its own motion, tell the prosecution that this is something that they should not be doing on authority in Boston. That's not available. Boston wasn't issued yet. So here what the defense really wants is a clairvoyant judge who should, on his own motion or her motion, come up and say to the prosecutors, this is improper and I don't need an objection. I recognize this is improper. And that's not the standard here. If this is, in fact, a close case or a legal gray area, that doesn't meet the plain error standard of what is considered a plain, defined by Pietkowski as a clear or obvious error. So if it's a close case or it's a gray area, it's not a clear or obvious error on the record, and that's not plain error and it's not subject to reversal without an objection. So therefore, the defendant also cannot meet his burden of making the showing of ineffective assistance of counsel. So for the same reasons, he doesn't have a meritorious objection. There's also trial strategy. With respect to the other argument, Simone makes some very quick points, which is the natural life penalty, he compares it to an offense that has only one victim. So therefore, whether mentally impaired or physically handicapped, it doesn't matter. We have two victims here. That's distinguishable and properly punished more severely. And with respect to Section 115-10, abuse of discretion review is very deferential, and in West, studying the state's brief, a number of factors supported the finding of reliability. And I identified sort of eight, it leaned from my brief. I'll read those very quickly. The lack of motive to fabricate, these are found by the trial judge. The children didn't have enough sexual knowledge to know that this would be gratifying conduct. They didn't recant and sort of along those same lines. The statements were later reaffirmed and consistently retold. They didn't automatically accuse others of, accuse the defendant of other sexual conduct. Most times there were non-leading questions. At most times, there was also terminology not unexpected for children their age. And statements were embarrassing enough to suggest truth when told to their father and strangers. A number of factors, the trial court's analysis was very meticulous, considered many, many facts and many, many factors. So that decision should be upheld. And the state would request this court to affirm for these reasons, and I would be willing to entertain any other questions. I have no other questions. Thank you for your testimony, counsel. Thank you, Your Honor. Counsel, for the defendant, I have a rebuttal, please. Briefly, Your Honor. Very briefly, I'm void there. What we're talking about is void there on the evidence. For example, I believe that if I were to get up and say to a jury, members of the jury, my client made a confession. Because he made a confession, does that put in your mind the belief that he is guilty and you would not be able to find him not guilty? I believe that if I asked a question like that, the prosecutor would levitate out of his seat and I would get a trip into chambers on that. I don't believe that void there regarding the evidence is the appropriate means of what void there was generated for. We're trying to find out if we have fair jurors. Jurors are going to have predispositions for everything. You cannot have a hierarchy of predispositions you can ask the jurors about regarding the evidence. Otherwise, what you're doing is you're stacking the jury. If there's law for it, fine. If the law says, if there's red-letter law that says you don't need to have medical evidence to be able to convict in these charges, fine. Then perhaps it becomes a proper question. Is there a version of that law that you're looking for there? Do you say that has to come from the statute as opposed to case law? Even case law, Judge. But isn't that exactly what the case that you rely on to support your theory, what is the name of the case, the domestic violence case? The whole basis behind the ruling of the court in that domestic violence case is that the lawyer was trying to indoctrinate the jury as to the law. This is not a law. There is no law in the books, Mr. Brucar, and if there were a law in the books, then it would be improper because then they would be trying to instruct the jury on the law. It is not the law. It's a piece of circumstantial evidence, is it not? The way I read it is what the state was trying to instruct the jury on is reasonable doubt. Reasonable doubt is as much a cornerstone of the law as anything that we have in the justice system. And that's what they're saying. They're saying, hey, for our reasonable doubt, we don't need this. Do you agree with us? If you agree with us, you can stay on the jury. If you don't, take a walk. I understand what you're saying. That's my position regarding this. Also, if I can very briefly comment regarding the constitutionality and due process, I am not making a strict comparison between the fact that there's two victims here and there's one victim in all the other cases. What we have here is a unique situation. We have a situation where the court is mandated, mandated to give natural life in a situation such as this. This is the one situation where, at a first-time offender, the court has no discretion. There's natural life sentences. It's discretionary. But in this case, it's mandated. And what is the basis for the mandate? Protecting children. Okay, we're protecting people who are particularly vulnerable. The point that I'm trying to make and the reason why I'm saying there's no rational basis for this, if Mr. McKinney had been accused of having sex with a 17-year-old who was profoundly mentally retarded and a 17-year-old who was profoundly physically handicapped, the judge who's sentencing him, if he's found guilty on that, is not mandated to give him natural life. And there is no rational basis to say that a child needs protection more than a person who is profoundly mentally retarded, a person who is profoundly handicapped, a person under the threat of a gun, a person under the age of 60. And why it's particularly egregious in this particular case is the argument that I have made, and I leave it up to you in terms of having read the record, this is a close case. There are two girls who are testifying, and the majority of their testimony, besides what they had on the stand, were statements that they made in 2005, more than three years after the incident took place. Are you getting into the constitutionality here? Are you still on the constitutionality of the sentence? I'm on the constitutionality of the sentence, absolutely. And how does closeness of the evidence affect that? I mean, closeness of the evidence would affect a lot of things in the case, but I don't think you're going to sit there and say we're going to give a guy... Are you saying it's unconstitutional, it should only be implied if the evidence is overwhelming? No, that's not what I'm saying. I'm giving this case as an example of the fact that here, the sentencing judge has no discretion in terms of what sentence he can give. And I think the closeness of the case also shows, in addition to the fact that we're talking about children as opposed to the example I gave before, somebody who's physically handicapped, somebody who's mentally handicapped, here is a case where, because of the closeness of the evidence, the judge still has no discretion in terms of what sentence he's going to give on it. You know, the jury has spoken. Okay, we have no choice. But in most mandatory sentencing cases, the court has no discretion, correct? The court always has some discretion. They do? They always have some discretion. Here, there is one sentence and one sentence alone he can give. In most cases, okay, mandatory penitentiary sentence, 6 to 30, 9 to 45. In a lot of these other cases, yeah, natural life can be given, but there's discretion in terms of what can be given. There's always some kind of range. There's always some kind of alternative sentence. There is no alternative sentence. And any crime, any sexual abuse crime, any habitual offender crime does not play like this. This is the only one, the only one. And I'm not saying that natural life in and of itself is not an appropriate sentence. That's already been discussed. The proportionality of it, that's not an issue. But purely and simply, the discretion is taken away from the judge. There's no rational basis in this particular case because of this particular class to take that discretion away from the judge. All right, counsel, your time is run here. If you have a couple of brief closing comments, go ahead. No, Judge, I believe I covered it. All right, well, thank you.